IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROGRESSIVE SPECIALTY INS. CO., | ) |
| Plaintiff, | ) Civil Action No. 2:22-cv-01525 |
| v. | ) Judge Cathy Bissoon |
| THOMAS J. FARNAN, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

The Motion for Summary Judgment (Doc. 63) filed by Debra Arnold and Sarah Meneskie, Administratrix of the Estate of Laura Elaine Meneskie, will be granted in part and denied in part.  The Motion to Join Defendants' Motion for Summary Judgment (Doc. 65) filed by Defendants Lequira Hutson and Noor J. Garza, Administratrix of the Estate of Parveena Begum Abdul, will be granted.

**I.      MEMORANDUM**

Plaintiff Progressive Specialty Insurance filed this action for a declaration that it has no duty to defend or indemnify the Estate of the insured, Ronald Morgan, for any claim made presently or in the future arising out of the underlying June 12, 2021 incident where Mr. Morgan crashed into the Biomat USA Plasma Center building.  As a result of the incident, Mr. Morgan and two other individuals (Laura Meneski and Parveena Begum) died, and Defendants Debra Arnold and Lequira Huston were injured.  Ms. Arnold and the Administrator of the Estate of Ms. Meneskie (together, "Injured Defendants") filed the instant Motion for Summary Judgment.  Ms. Hutson and the Administrator of the Estate of Ms. Begum filed their Motion to Join (Doc. 65) the Motion for Summary Judgment.  Progressive filed its Concise Statement of Facts (Doc. 66)

and Memorandum of Law in Opposition (Doc. 69) to Injured Defendants' summary judgment motion but opted not to file a cross-motion for summary judgment.

Injured Defendants have shown that there is no genuine dispute as to any material fact that the allegations of the underlying complaint (the "Garza Complaint") triggers a duty to defend under the Policy.[1]  In the duty to defend context, whether an underlying claim is "potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the [underlying] complaint." Erie Ins. Exch. v. Moore, 228 A.3d 258, 265 (2020).  "If any doubt or ambiguity exits, it must be resolved in favor of coverage." Id.

Here, the Policy provides coverage for "damages for **bodily injury** and **property damage** for which an insured becomes legally responsible because of an accident."  Compl. ¶ 18.  The Policy leaves "accident" undefined, so courts are instructed to construe this to mean "an unexpected and undesirable event occurring unintentionally."  Stevens & Ricci, Inc., 835 F.3d 388, 405 (3d Cir. 2016).  Analyzing the four corners of the Garza Complaint, as the Court must on the issue of Progressive's duty to defend, see Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co., 908 A.2d 888, 896–97 (Pa. 2006), the factual allegations of the Garza Complaint allege that Ms. Abdul died due to "a motor vehicle accident," Garza Compl. ¶ 11, and

---

[1] The Policy provides: "If **you** pay the premium for this coverage, we will pay damages for **bodily injury** and **property damage** for which an insured person becomes legally responsible because of an accident."  Compl. ¶ 18.  Progressive, however, contends that no coverage is available for intentional acts, relying on the following exclusion:

> Coverage under this Part I, including **our** duty to defend, will not apply to any **insured person** for. . . **bodily injury** or **property damage** caused by an intentional act of that **insured person**, or at the direction of that **insured person**, even if the actual injury or damage is different than that which was intended or expected . . . .

Compl. ¶ 19.

that the vehicle was "operated by Robert K. Morgan," *id*. at ¶ 12, who came off the West End Bridge at a high rate of speed when [the vehicle] crashed into the Biomat Plasma Center continuing to travel through the building to the back coming to rest and catching on fire," *id*. The Garza Complaint further alleged that Ms. Abdul's injuries and damages were due to the negligence of Mr. Morgan, alleging facts such as "operating his vehicle at such a high rate of speed that he could not bring it to a stop before crashing into the building," *id*. at ¶ 14(a), and for "failing to properly maintain his . . . motor vehicle so as to avoid or prevent mechanic problems that might result in collisions with buildings and persons, *id*. at ¶ 14(c). Based on the four corners of the Garza Complaint and Policy, it is reasonable that the Policy "potentially covers" the underlying claim based on the facts alleged. Therefore, the Injured Defendants' Motion will be granted in this regard.

  Injured Defendants argue also that Progressive has a duty to indemnify as a matter of law because Progressive has failed to prove its exception applies, whereas Progressive disagrees or argues that this duty should proceed to trial. Although the parties conflate the issues, it is important here to distinguish the duty to defend from the duty to indemnify. Unlike the duty to defend, the duty to indemnify "'is not necessarily limited to the factual allegations of the underlying complaint. Rather, there must be a determination that the insurer's policy *actually* covers a claimed incident.'" Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co., 939 F.3d 243, 250 (3d Cir. 2019) (quoting State Farm Fire & Cas. Co. v. DeCoster, 67 A.3d 40 (Pa. Super. Ct. 2013)). Additionally, where, as here, the non-moving party bears the trial burden on an issue (here, Progressive's burden as to whether the exclusion applies), "the burden on the moving party may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." Liberty Mut. Fire Ins. Co. v. Skorochod, 2018 WL 487838, at *2

3

(E.D. Pa. Jan. 19, 2018) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "The non-moving party need not depose its own witnesses, but must respond with evidence that would be admissible at trial . . . ." *Id*. (listing as sufficient affidavits or an unsworn declaration under oath). "And while a court cannot rely on inadmissible evidence in deciding a summary judgment motion, hearsay evidence produced in opposition to a summary judgment motion may be considered 'if the out-of-court declarant could later present the evidence through direct testimony, *i.e.*, in a form that would be admissible at trial.'" *Id*. (quoting J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990)).

Injured Defendants attempt to discharge their burden, arguing that Progressive failed to put forth evidentiary proof that Mr. Morgan intended the "harm suffered by the Injured Defendants." Mot. Summary J. Br. 5; *id*. at 7, 9, 11 & 18. The Court disagrees with the presupposition. Although Injured Defendants acknowledge that Pennsylvania courts adopt a subjective intent standard, Mot. Summary J. Br. 5 (citing United Services Auto. Ass'n. v. Elitzky, 517 A.2d 982, 989 (Pa. Super. Ct. 1986)), they, in effect, insist that Progressive meet a specific intent standard that Mr. Morgan intended to "harm[ ] any of the Injured Defendants," Mot. Summary J. Br. 5, or "desire[ ] any consequence other than suicide," *id*., which was rejected in *Elitzky*, *see* Elitzky, 517 A.2d at 987–88 ("Insurance coverage is not excluded because the insured's actions are intentional unless he also intended the resultant damage," but "[w]e also reject the view that intent means specific intent to cause the precise injury which did occur."). Because the Court finds that specific intent is not required under Pennsylvania law, it fails to see how Injured Defendants can point to "an absence of evidence to support the

4

nonmoving party's case." Thus, the Court holds that Injured Defendants have failed to meet their burden.[2]

Even if they had, it is likely that Progressive could have carried its burden of demonstrating that the exclusion applies. Indeed, there is sufficient evidence in the record from which a reasonable juror could conclude that Mr. Morgan brought about the harm that he intended – that is, Mr. Morgan intended to harm himself and the occupants of the building when he "aimed his vehicle at over 90 miles per hour at entrance doors of a building in the middle of the day." Mem. Law Opp'n 11; *see also* Concise Statement of Facts ¶¶ 12–14(a)-(g) (deposition testimony of City of Pittsburgh Lead Investigator Glenn E. Alridge concluding that Mr. Morgan drove his car into the building; indicating steering input to evidence Mr. Morgan's control; gas pedal was depressed 97% for at least five seconds before impact; no braking during this time); *id*. at ¶¶ 15–16(a)-(g) (deposition testimony of witness Taylin Tyler indicating that she observed the speed of the vehicle, did not see deceleration of speed or that the vehicle was out of control); *id*. at ¶¶ 17–20 (retained accident reconstructionist concluding Mr. Morgan accelerated from 84 mph to 92 mph at time of impact from Biomat surveillance video); *id*. at ¶¶ 21–22(a)-(z) (testimony from ex-wife Barbara Morgan recounting her alleged phone call with Mr. Morgan right before the incident); *id*. at ¶¶ 31–32 (finding by medical examiner that Mr. Morgan's death was by suicide and that he had not sustained any medical emergency at the time of the incident). Similarly, based on these facts, a reasonable juror could also conclude that Mr. Morgan acted

---

[2] The Court finds Injured Defendants' "inferred intent" argument irrelevant as this doctrine only applies to insurance cases involving child sexual abuse, which is not at issue here. *See* Minnesota Fire & Cas. Co. v. Greenfield, 855 A.2d 854, 863 (Pa. 2004). Although the Court finds, *infra*, that Mr. Morgan's requisite intent is satisfied under *Elitzky* for this stage of the litigation, Progressive's argument that the doctrine of "transferred intent" applies is persuasive. *See* Mem. Law Opp'n 9–11 (citing cases for the proposition that Mr. Morgan's intent to cause harm to the building and someone (*i.e.*, himself) can be transferred to the Injured Defendants).

5

knowing that such consequences of harming Injured Defendants were substantially certain to result. *See id.* Additionally, now that discovery has ended, Injured Defendants have presented no facts to demonstrate that the incident here was an accident, or otherwise unintentional. (*e.g.*, malfunction of the automobile as pleaded in the underlying action, etc.). Germantown Ins. Co. v. Martin, 595 A.2d 1172, 1176 (Pa. Super. Ct. 1991). To be clear, the Court merely finds that Progressive has carried its burden at the summary judgment stage. Progressive has not moved for summary judgment and, therefore, the Court's inquiry ends here. Thus, Injured Defendants' Motion for Summary Judgment is denied in this regard.[3]

With this in mind, the Court recognizes that this may call into question whether a stay is appropriate, pending a trial in state court, or whether a trial should be scheduled in this case to

---

[3] Injured Defendants' reliance on *Eisenman*, *Elitzky* and *Moore* is misplaced. Injured Defendants rely on these cases to argue that Progressive's "different than intended" clause is inapplicable. Mot. Summary J. Br. 9–14. As Progressive persuasively argues, *Eisenman* and *Moore* are distinguishable based on the facts of the case given that the burglar in *Eisenman* did not intend to cause *any* damage when he dropped the match on the floor, Mem. Law Opp'n 6–9 (citing Eisenman v. Hornberger, 264 A.2d 673 (Pa. 1970)), and "Mr. Morgan's action of driving his vehicle into the entrance doors of a building at midday was one intentional act which caused all of the resultant damage, unlike the series of events in *Moore*," *id*. at 8 (citing Moore, 228 A.3d at 267). Additionally, despite Progressive having the identical exclusion provision in *Moore*, as Progressive correctly argues, *Moore*'s analysis was within the context of Erie's duty to defend, which is broader than the duty to indemnify analysis and merely relies on the four corners of the underlying complaint and insurance policy. *Id*. at 7. Further, Injured Defendants' argument ignores the Superior Court of Pennsylvania's holding that the exclusion provision at issue there, which is identical to Progressive's exclusion provision, "also applie[d] 'even if the actual injury or damage is different than expected or intended.'" Am. Nat. Prop. & Cas. Companies v. Hearn, 93 A.3d 880, 886 (2014). Thus, the Court rejects Injured Defendants' reliance on *Eisenman*, *Elitzky* and *Moore* to draw a distinction between intending the act and intending the damage.

Finally, Injured Defendants attempt to insert ambiguity where none exists, arguing that the "different than intended" clause "in essence" "can be read to mean coverage is *excluded even if* the actual injury or damage is an accident." Mot. Summary J. Br. 13–14. The ambiguity of "accident" is not included in the provision but, instead, is inserted by Injured Defendants to create a Parade of Horribles, which this Court rejects.

resolve the indemnity issue.  Thus, the Court will convene a status conference at which the parties must be prepared to address these issues.

## II.   ORDER

The Motion for Summary Judgment (Doc. 63) filed by Defendants Debra Arnold and Sarah Meneskie, Administratrix of the Estate of Laura Elaine Meneskie, is **GRANTED IN PART AND DENIED IN PART**.  The Motion to Join Defendants' Motion for Summary Judgment (Doc. 65) filed by Defendants Lequira Hutson and Noor J. Garza, Administratrix of the Estate of Parveena Begum Abdul, is **GRANTED**.  A Telephonic Status Conference is scheduled for **April 22, 2025, at 11:00 a.m.**  The parties shall be prepared to discuss the issues addressed in this Memorandum and Order and/or schedule trial.

IT IS SO ORDERED.

March 26, 2025                                                  s/Cathy Bissoon
                                                                Cathy Bissoon
                                                                United States District Judge

cc (via ECF email notification):

All Counsel of Record